[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above-captioned case started as an action for dissolution of the defendant Bristol General Manufacturing Holding Co., Inc. ("Bristol Holding") based on corporate director deadlock. When the action started the Achille Gianoni Revocable Trust (the "Trust") owned all of the preferred stock (1000 shares) of Bristol Holding and John and Thomas Gianoni owned all of the common stock of that corporation. Shortly after the commencement of this action, John Gianoni purchased all of the common stock of Thomas and then elected to purchase all of the preferred stock from the Trust pursuant to Connecticut General Statutes § 33-900 (d). After John Gianoni filed the election to purchase the shares the of Bristol Holding, the parties were unable to agree on a value for the preferred stock. Connecticut General Statutes § 33-900 (d) provides that the court shall determine value of shares if the parties cannot reach an agreement thereon. Therefore, the issues before this court are now: what was the value of the preferred stock of Bristol Holding on July 8, 1999, the day before the Complaint in this action was served; and, what are the terms under which John Gianoni must purchase the shares of preferred stock.
After a trial the court finds as follows. Prior to 1986 Bristol General Manufacturing Company, Incorporated was owned by Achille Gianoni. Achille and his wife, Alda, had seven children, two of whom were active in the business. Sometime in 1986, Achille Gianoni decided that he wanted to retire and transfer the business to the two sons that worked in business, John and Thomas Gianoni. This was accomplished through series of transactions described below.
In 1986, Achille Gianoni owned all of the stock in Bristol General Manufacturing Company, Incorporated. The device used to transfer ownership was the creation of Bristol General Manufacturing Holding Company, Inc. Achille transferred all of the common stock of Bristol General Manufacturing Company, Incorporated ("Operating Corporation") to CT Page 16583 Bristol General Manufacturing Holding Company, Inc. ("Holding Corporation").
The Holding Corporation was created with three classes of stock: common; class A common; and preferred. There is no dispute with respect to the common and class A common stock. Initially, Achille received all of the stock in the Holding Corporation in return for his transfer of all of the outstanding stock of the Operating Corporation to the Holding Corporation. Achille then owned all of the outstanding stock of the Holding Corporation (both the common and preferred stock) and the Holding Corporation owned all of the outstanding stock of the Operating Corporation.
The transfer the ownership of Bristol General from Achille to John and Thomas took place on August 14, 1986. The basic outline of the transfer was as follows: All of the common stock of the Holding Corporation was transferred to John and Thomas Gianoni (50% each) in return for promissory notes. The preferred stock consisted of 1000 shares with a par value of $350.00 each, for a total par value of $350,000.00. This equaled $50,000 per child for each of Achille's seven children. After the transfer of the Common and Class A Common, Achille still owned the preferred stock in the Holding Corporation, and he held the promissory notes which had been signed by John and Thomas in payment for their common and class A common stock.
There were two letter agreements, signed on August 14, 1986, which concerned the preferred stock. The first letter agreement dealt with the redemption of the preferred stock by the Holding Corporation. The second letter agreement dealt with the transfer by Achille of two sevenths of the preferred stock to John and Thomas. These letter agreements will be discussed in greater detail below.
In addition to transferring Bristol General to John and Thomas by means of transferring ownership of the Holding Corporation, on August 14, 1986, Achille Gianoni also executed the Achille Gianoni Revocable Trust Indenture (the "Trust") The Trust provided that Achille's wife, Alda, would receive all of the income from the Trust property during her lifetime. On Alda's death. all property of the Trust was to be transferred, in equal shares, to the seven children, with the proviso that if John and Thomas had already received their portions of the preferred stock in the Holding Corporation, then their shares of the Trust property were to be adjusted accordingly.
When Achille Gianoni died, the promissory notes which he received from John and Thomas as well as all of the preferred stock passed to the Trust CT Page 16584 under the terms of his will. The payment for the common stock is not an issue in this case. The Trust continues to hold all of the preferred stock.
After Achille Gianoni died in August of 1995, relations between John and Thomas Gianoni deteriorated. By 1999, John and Thomas Gianoni could no longer agree on the operation of the business. From 1986 through 1999 John had been President of the Bristol General and Thomas had been Vice President and Secretary. Thomas attempted to lock John Gianoni out of the business and was temporarily successful. However, John ultimately retook possession of the business, rehired the employees and continued running the business. This lockout is the subject of another suit which is not now before the court. In addition to locking out John Gianoni, the Trust brought an action under Connecticut General Statutes, § 33-896, seeking to dissolve the corporation. Under Connecticut General Statutes, § 33-900 (a), John elected to purchase the shares owned by the Trust. Since the parties could not agree on a value for the preferred stock, they seek this court's determination of the fair value of the preferred stock pursuant to Connecticut General Statutes, § 30-309 (d).
The attributes of the preferred stock are spelled out in the Articles of Incorporation of Bristol Holding, which provides that the authorized number of shares of preferred stock in that corporation are 1,000 and that the preferred stock has a par value of $350. It further provides:
 Preferred Stock, par value $350. shall not be entitled to vote, shall have a noncumulative right to dividends of $35 per share before dividends are paid in any corporate fiscal year on the Common Stock and Class A Common Stock, shall be preferred in liquidation over the Common Stock and Class A Common Stock to the extent of its par value but shall not participate in liquidation beyond its par value and shall be callable at the option of the Corporation at its par value.
Emphasis added.
The preferred stock is non-voting. It is entitled to a dividend of 10% of its par value ($35.00/share) in any year in which the Holding Corporation pays a dividend to the holders of common stock. The right to dividends is non-cumulative. The holders of the preferred stock have no right to convert the preferred stock to common stock. Under the terms of the Articles of Incorporation, the holders of the preferred stock have no right to force the Holding Corporation to call or redeem the preferred stock. The Holding Corporation has the right to redeem or call some or CT Page 16585 all the preferred Stock at any time of the Holding Corporation's choosing at its par value ($350.00 per share). Finally, after creditors are paid, upon liquidation the preferred stock will be paid its par value prior to any distribution to the holders of common or class A common stock, but will not participate in any other liquidation payments.
In summary, under the terms of the Articles of Incorporation, unless there is a dividend paid to the holders of the common stock, the most the holders of the preferred stock will ever receive is $350.00 per share in one of two circumstances: First, upon liquidation if there is a liquidation value of at least $350,000; or Second, if the corporation decides to redeem or call the preferred stock at some point. In short, under the terms of the Articles of Incorporation, absent liquidation, the preferred stock is the virtual equivalent of a non-interest bearing loan which will only be repaid if and when the Holding Corporation sees fit to do so. It does not participate in any equity growth of the business.[1]
The parties stipulated that as of the date that the dissolution action was brought that the liquidation value of the business was at least $350,000. However, the business has not been liquidated, and the preferred shareholders have no ability to force a liquidation.
Under the terms of the Articles of Incorporation of the Holding Corporation. the preferred stock has little value. It entitles the owner to receive a dividend in any year in which the Holding Corporation pays a dividend. The Holding Corporation has never paid a dividend and neither party contends that it ever will. Assuming a liquidation value of $350,000, the preferred stock has a value of $350,000 upon liquidation. But the preferred stockholders have no ability to force a liquidation.
The value of the preferred stock must be evaluated in light of the two letter agreements which were signed at the time the stock was created. The first letter agreement requires the Holding Corporation to redeem the preferred stock upon the death of the survivor of Achille and Alda Gianoni as soon as it can be done when the financial condition of Bristol General reasonably permits. As of July, 1999, the relevant date for valuation purposes, Achille was deceased, but Alda was not.
The second letter agreement calls on Achille Gianoni to transfer one seventh of the preferred stock to each of John and Thomas either during his lifetime or by his will. When taken together, the two letter agreements make it clear that the preferred stock is to be redeemed after Alda's death when the financial condition of the business reasonably permits. CT Page 16586
Since the letter agreements regarding the preferred stock place some obligations on the Holding Corporation to redeem the preferred stock, they increase the value of the preferred stock. Alda is still alive, and it is appropriate to use her life expectancy, which the parties have stipulated was 9.3 years, as the best estimate to determine when the Holding Corporation's obligation to redeem the preferred stock is likely to be triggered. It is more difficult to determine to what extent the Holding Corporation will be able to redeem the preferred stock that far into the future.
At trial the defendant introduced the testimony of Charles E. Coyne, ASA. He testified that in his opinion the most reasonable value of the preferred stock is 25% of its par value. He based this on factoring in Alda's life expectancy with various assumptions about the time frame within which Bristol General would be able to redeem the preferred stock. The assumptions included the following: that Bristol General would be able to redeem all of the preferred stock immediately upon Alda's death; that Bristol General would be able to redeem the preferred stock over a five year period following Alda's death; and that Bristol General could redeem the preferred stock over a ten year period after Alda's death. These assumptions resulted in present values between 18% and 30% of the par value of the preferred stock. The court finds that the preferred stock has a present value of $87,500, 25% of its par value.
The Trust argues that John paid Thomas $20,000 for one seventh of the preferred stock and, therefore, the preferred stock has a minimum value of $140,000. This argument is not persuasive. Thomas' interest in the preferred stock was purchased as part of John's purchase of Thomas' 50% ownership of the common stock. John paid a premium for the preferred stock so that he could acquire Thomas' common stock, own 100% of the common stock and thereby control the business.
Under the terms of the Trust and the letter agreements, each child of Alda and Achille is entitled to one seventh of the preferred stock. The parties agree that John has already paid Thomas for Thomas' preferred stock. Therefore, John presently has the right to two sevenths of the preferred Stock. It would make little sense for the Holding Corporation, the common stock of which is all owned by John, to pay the Trust for John's preferred stock. Therefore, the court finds that the defendant Holding Corporation must pay the Trust $62,5000 for five sevenths of the preferred stock.
Not only must this court determine the value of the preferred stock, under Connecticut General Statute Section 33-900 (e), it must also determine the payment terms. It is hereby ordered that John Gianoni make CT Page 16587 the $62,500 payment with interest at the approximate rate of 5% per annum in 30 equal installments of $2220 each.[2] In making this determination, the court has taken into account that it was never the intent of Achille Gianoni that the company should be unduly burdened by the redemption of the preferred stock. The court has also noted that John Gianoni was able to pay about $2,000/month on the two promissory notes for the common stock.
The court further orders that the $62,500 amount is to be secured by a mortgage on the real property of the Operating Corporation located in Bristol, Connecticut. The court finds that that real property has a fair market value of $634,000. The mortgage to the Trust will be subordinated to any mortgages which the Operating Corporation might wish to place on the company's real estate, so long as the total amount of any such mortgages to which the preferred stockholders must subordinate does not exceed of $500,000.
By the court,
Aurigemma, J.